**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **TERRENCE NICHOLS** | : |
|     Plaintiff | : Civil Action No. |
| | : |
|     v. | : |
| **ABDOLREZA HAJIR** | : |
| **IHSAN FARMS, LLC** | : Jury Trial Demanded |
| **PRINCESS ANNE ENTERPRISES** | : |
| **HALAL FOOD COUNCIL, individually** | : |
| **And jointly** | : |
|     Defendants | : |

## CIVIL COMPLAINT

Plaintiff, Terrence Nichols, by and through his undersigned counsel, Robin J. Gray, Esq. respectfully brings this cause of action against Defendants Abdolreza Hajir, Ihsan Farms, LLC, and Princess Anne Enterprises, LLC for breach of contract, unjust enrichment, specific performance and fraud, as follows:

**PARTIES**

1. Plaintiff, Terrence Nichols, (hereinafter referred to as "Mr. Nichols") is an adult individual who resides at 2556 Andrews Lake Road, Felton, Delaware 19943.

2. Defendant, Abdolreza Hajir ("Mr. Hajir"), is an adult individual residing at 1313 Taney Avenue, Salisbury, MD 21801, with offices located at 30931 Park Drive, Princess Anne, MD. Mr. Hajir is the co-partner (or former partner) of Mr. Nichols, and the manager and registered agent of Defendants Ihsan Farms, LLC, Halal Food Council, Inc. and Princess Anne Enterprises, LLC.

3. Defendant Halal Food Council, USA, Inc. ("HFC") is a corporation organized in the State of Maryland, with a principal office location at 1313 Taney Avenue, Salisbury,

Maryland 21801, and a business location at 11738 Somerset Avenue, Princess Anne, Maryland 21953.

4. Defendant Ihsan Farms, LLC is a limited liability corporation organized in the State of Maryland, with a principal office location of 30931 Park Drive, Princess Anne, Maryland 21853.

5. Defendant Princess Anne Enterprises, LLC is a limited liability corporation organized in the State of Maryland, with a principal office location of 1313 Taney Avenue, Salisbury, Maryland 21801 and a business location at 30931 Park Drive, Princess Anne, Maryland 21853.  On information and belief, PAE is the successor-in-interest to HFC's interest in Ihsan Farms, LLC.

6. On or about June 27, 2018 Princess Anne Enterprises registered the trade name "Ihsan Farms" ("Ihsan Trade Name") with the State of Maryland, using a business address of 30931 Park Drive, Princess Anne, MD 21853.  On information and belief, Mr. Hajir and PAE adopted this trade name surreptitiously to blur the distinction between their own operations and those of Ihsan Farms, LLC, a distinct corporate entity.

7. Princess Anne Enterprises, LLC currently conducts business under the Ihsan Trade Name.

**JURISDICTION**

This Court has original and exclusive jurisdiction over this action pursuant to 28 U.S.C. 1332 (c). The United States District Court for the District of Maryland is the district in which the cause of action arose and is pending, and thus, is the proper venue for this action.

BACKGROUND

1. On or about November 1, 2007 Nichols and Hajir began to discuss and explore the possibility of forming a partnership to build a small hand slaughter Halal Processing Plant in Maryland.

2. Both Nichols and Hajir had experience in the food processing business and believed that a Halal processing plant was needed to provide poultry products in conformance with the standards of the Muslim community.

3. Halal poultry is slaughtered and prepared through a special process, knowns as Zabiha, that meets strict religious and dietary requirements of the Muslim community.

4. On or about December 2007. Nichols contacted Brad Dunn, a friend working at Cagle's Poultry Company about creating a Halal brand product.

5. Mr. Dunn sent an email back on December 7, 2007, addressed to both Nichols and Hajir acknowledging the inquiry about assistance with the Halal processing plant (See 12/07/2007 email attached as Exhibit "A").

6. On or about January 2008, Nichols and Hajir created a Business Plan for "Tauherr" Poultry Farms. The name was eventually changed to Ishan Farms, LLC.

7. In the January 2008 business plan, both Nichols and Hajir are named as co-partners of the business. (See January 2008 business plan attached hereto as Exhibit "B").

8. It was agreed between Hajir and Nichols that Hajir would be a 60% partner and Nichols would be a 40% partner.

9. Hajir's responsibility as a 60% partner was to be the managing director and was to secure financing for the project as well as well as to assist in managing the facility since Hajir had previous poultry finance experience at Perdue Farms and Allen

Family Foods. Hajir also had over 20 years of Halal food coordinating activities domestically and internationally.

10. Nichols responsibility as a 40% partner was that as Director of Operations. Nichols also performed most of the leg work in meeting with county and town officials to obtain the necessary approvals due to Nichols experience in administration at Conagra Co. and Allen Family Foods as Director of Operations.

11. The business projections in accordance with the January 2008 business plan included the creation of 25 employment positions and to target the Muslim Population in the Northeast, including New York, New Jersey and Massachusetts as well as the Great Lake Region, West Coast, Mid-Atlantic Region including Maryland, Virginia, Delaware and North Carolina and the South East Region including Florida, Georgia, Texas and Alabama.

12. Halal poultry is slaughtered and prepared through a special process, knowns as Zabiha, that meets strict religious and dietary requirements of the Muslim community.

13. On June 20, 2009, Nichols and Hajir met with Danny Thompson, who is the Executive Director of the Somerset County Economic Development to discuss the Halal Poultry Project and purchase of property in the Princess Anne Business Park.

14. On or about September 17, 2010, Nichols located property within the Princess Anne Business Park and negotiated the purchase price of the property on which the plant would be constructed.

15. On or about July 13, 2011, Hajir sent out an email to a potential financer about the poultry project and included Nichols on the email, which included four articles

published about the project which recognized Nichols as one of the owners of the poultry project.

16. On or about August 16, 2011, Nichols brought in the president of Draper Equipment Production and Services to take the lead in plant design and to supply the plant equipment.

17. Between 2011 and 2013, and thereafter, Nichols and Hajir were continuing to secure financing for the poultry plant.

18. On September 7, 2012, Clean Water Technology sent a letter on behalf of Tauherr Poultry (now Ishan Poultry) naming Hajir and Nichols as owners of the plant and to request an allocation of 12,500 gallons of water from the Princess Anne Industrial Park for the plant's operation. (See letter dated September 7, 2012 attached hereto as Exhibit "C").

19. On or about June 20, 2013, Hajir and Nichols met with architects, engineers and surveyors, Davis, Bowden and Friedel to design the blueprints for the plant.

20. On or about September 29, 2014, Nichols negotiated the purchase of a DAF water unit with Ed Foley of DAF Environmental, LLC.

21. On or about November 4, 2015, Nichols worked with the Herema Company to purchase a red water chilling system.

22. On or about November 24, 2015, Nichols met with First State Packaging, Inc. to purchase box machines.

23. On or about January 6, 2016, Nichols filled out the USDA grant of inspection permit as one of the partners of the business.

24. On or about January 11, 2016, Nichols sent Hajir the agreement Nichols negotiated with Eastern Lift Truck to purchase a forklift for the plant.

25. On or about May 23, 2016, both Nichols and Hajir met with Zachery Saletan to supply the live chickens for the plant.

26. On or about July 16, 2016, Nichols' son, who is a graphic designer. Designed the product labels for the plant and emailed the designs to both Nichols and Hajir.

27. On or about October 13, 2016, Nichols completed the HAACP plan for the USDA with their consultant, Earl Nichols.

28. On or about October 31, 2016, Nichols set up an account with Interstate Container to purchase self-locking boxes and lids.

29. On or about mid-November 2016, Nichols and Hajir had a successful test run at the plant and Nichols received a congratulatory letter from Zachary Saletan.

30. The poultry plant started operations on or about December 2016, after securing substantial financing from HalalUSA, LLC ("HUSA").

31. Hajir connected with HUSA through the Muslim community to invest in the poultry plant. HUSA also brought their customer base to the plant to begin initial sales of the poultry product.

32. Nichols worked closely with HUSA to provide the poultry product to the needs to HUSA's customers.

33. After the plant began operations, Hajir's business practices and recognition of Nichols as a business partner began to change.

34. Hajir would have outbursts toward Nichols about how Nichols was running the business.

35. Hajir would then apologize and assure Nichols that he was still part of the company.

36. As the business was starting to make money after Hajir started to secure additional capital from HUSA, Hajir continued to be more hostile toward Nichols.

37. During this time in 2017, it is believed that Hajir was trying to expand the business by purchasing additional poultry facilities without Nichols knowledge, in order to try to expand the business.

38. Hajir was engaging in a course of conduct designed to keep Nichols from benefiting from his years of work in helping to bring the Poultry plant to fruition and to assist in making the company profitable.

39. Hajir was entering into business relationships and adding partners without discussing his intentions with Hajir.

40. Nichols did not collect any money during all of the years he spent negotiating and procuring all of the necessary contracts, property purchases, etc. so that the poultry plant could be operational and could start to earn money and make a profit, for which Nichols was to receive forty (40) percent.

41. On or about November 20, 2017, Nichols was present at Ishan Poultry as the Director of Operations.

42. On or about November 20, 2017, Hajir had an explosive outburst directed at Nichols in front of the plant's employees.  Although Hajir had several outbursts against Nichols, this was the worst and Nichols decided, the last outburst he would tolerate.

43. Nichols then removed himself from the property so that there would not be any further similar occurrences.

44. Hajir thereafter contact Nichols and apologized for his outburst and assured Nichols that Nichols was still part of the company.

45. Since Nichols' physical departure from the poultry plant, Hajir has been operating and producing poultry products and making a profit.

46. However, although the poultry plant is making a profit, Nichols has not been paid his forty (40%) of the profits since 2017.

47. Nichols has requested an accounting of the company's financials to ascertain the money due and owing to Nichols as a partner in the poultry plant.   Hajir has refused to provide the requested accounting.

48. On or about July 1, 2020, Nichols requested a letter be sent to Princess Anne Enterprises, LLC, of which Hajir is the owner, requesting an accounting and requesting payment representing his 40% share on the company.

49. According to Hajir, Nichols is still part of the Ishan Poultry and there has been no dissolution of the partnership, thus Nichols is entitled to 40% of the gross profits of Ishan Poultry from the date the plant began operations to the present.

50. Hajir, through counsel, responded that Hajir had no relationship with Princess Anne Enterprises other than as an employee and that Nichols misappropriated trade secrets and confidential proprietary information of Princess Anne Enterprises, LLC  when he left to pursue another business venture.

51. The letter dated July 1, 2020 is full of lies and demonstrates the intent of Hajir in his constant refusal to admit there was a partnership and that Nichols is due money as a 40% owner of Ishan Poultry.

## COUNT I
## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

52. Plaintiff Terrence Nichols hereby incorporates paragraphs 1 through 48 as if fully set forth at length herein.

53. Nichols and Hajir formed a partnership in accordance with the Maryland Revised Uniform Partnership Act Section 9A-101, et seq., specifically Section 9A-202, which provides for the enforceability of both written and oral contracts.

54. Hajir formed the LLC's of Ishan Farms, Halal Food Council and Princess Anne Enterprises as the sole registered agent of all entities and all of which Nichols was a forty (40) percent co-owner by virtue of his oral partnership agreement with Hajir.

55. Nichols, in his role as owner/partner, entered into contracts, negotiated property agreements and purchase prices for property, etc. which bound Hajir and the other Defendants to the contracts and without which Defendants would not be able to conduct business.

56. Hajir and the other Defendants failure to compensate Nichols as owner/partner and failure to provide an accounting breaches the contract between Nichols and Hajir and the other Defendants.

57. As a consequence of these breaches, Nichols has been severely harmed in an amount to be proved at trial.

WHEREFORE, Plaintiff Terrence Nichols seeks judgment against Defendants under Count 1 for the following relief:

A. Compensatory damages in excess of $175,000.00

B. Costs, attorneys' fees and post judgment interest; and

C. Such other and further relief as this Court deems proper.

## COUNT II
## UNJUST ENRICHMENT

58. Plaintiff, Terrence Nichols, hereby incorporates paragraphs 1 through 54 as if fully set forth at length herein.

59. Nichols conferred a benefit upon Hajir and the other Defendants by investing his time and energy as an owner/partner of Ishan Poultry and Princess Anne Enterprises to procure all necessary contracts, licenses, and equipment in order for the poultry plant to start operations.

60. Hajir and the other Defendants are only able to operate the plant and financially benefit from the continuing to operation of the poultry plant because of Nichols' years of work as described above.

61. Defendants knew and appreciated that they have benefitted from Nichols sweat equity and personal hands on investment to start the poultry plant.

62. Retention of all of the profits from the operation of the poultry plant would be unjust and inequitable without payment to Plaintiff of his forty (40) percent share as per the partnership agreement.

WHEREFORE, Plaintiff Terrence Nichols seeks judgment against Defendants under Count 1 for the following relief:

A. Compensatory damages in excess of $175,000.00

B. Costs, attorneys' fees and post judgment interest; and

C. Such other and further relief as this Court deems proper.

## COUNT III
## SPECIFIC PERFORMANCE

63. Plaintiff Terrence Nichols hereby incorporates paragraphs 1 through 59 as if fully set forth at length herein.

64. The parties properly entered into an oral partnership agreement whereby Hajir is to receive sixty (60) percent of the gross profits and Nichols is to forty (40) percent of the gross profits.

65. Defendants have reneged on the partnership agreement and refused to abide by the terms of the agreement.

66. At all times relevant hereto, Nichols was ready, willing and able to abide and did abide by his obligations as an owner/partner of Defendants.

67. Therefore, Nichols seeks an order that Defendants must:

    a. Provide Nichols a full and complete accounting of all financial matters related to Ihsan Farms, LLC.

    b. Allocating the income and profits from Ihsan Farms, LLC to Nichols as per the partnership agreement.

    c. Reimbursing Nichols for all profits and income to which Nichols is entitled under the partnership agreement.

    d. Providing full information on the business of Ihsan Farms, LLC and

    e. Providing full information regarding all business conducted under the Ihsan Trade Name.

WHEREFORE, Plaintiff Terrence Nichols seeks judgment against Defendants under Count III for the following relief:

    A. A Court order requiring Defendants to provide the relief requested above;

    B. Costs, attorneys' fees and post judgment interest; and

    C. Such other and further relief as this Court deems proper.

## COUNT IV
## FRAUD

68. Plaintiff Terrence Williams hereby incorporates paragraphs 1 through 66 as if fully set forth at length below.

69. The Defendants maliciously, intentionally and willfully mispresented that Nichols was a forty (40) percent partner and that Defendants would pay Nichols forty (40) percent of the gross profits from the operation of the poultry plant.

70. Nichols and Defendants stand in a fiduciary relationship to each other and to the partnership.  The fiduciary duties owed by a partner are codified in the Uniform Partnership Act found in the Maryland Corporations and Association Article § 9A-404 and are limited to the duties of loyalty and care as set forth in the sub-sections.

71. A partner's duty of loyalty is comprised of three subsections: 1) the duty to account, 2) the duty to refrain from dealing adversely with the partnership and 3) the duty to refrain from competing with the partnership.

72. The duty to account requires the partner to account for all property, profit or benefit derived by him in the conduct and winding up of the partnership business, or that was derived from any use by him of the partnership property, including the appropriation of a partnership opportunity.

73. The duty to refrain from dealing adversely with the partnership applies strictly to the conduct of the business or in winding up the business.

74. Defendants have a fiduciary duty to Nichols and a duty of good faith and fair dealing under the partnership agreement, which Defendants have breached.

75. Defendant intended for Nichols to rely and Nichols reasonably relied on the Defendants' fraudulent misrepresentations that Nichols was an owner/partner and would receive forty (40) percent of the gross profits of Ishan Poultry.

76. Defendants' actions were taken with malice, fraud, and oppression, thus justifying an award of exemplary and punitive damages.

77. As a direct and proximate result of Defendants' fraudulent actions, Nichols has suffered financial damages and seeks compensatory and punitive damages according to proof as well as attorney's fees.

WHEREFORE, Plaintiff Terrence Nichols seeks judgment against Defendants under Count 1 for the following relief:

A. Compensatory damages in excess of $175,000.00

B. Costs, attorneys' fees and post judgment interest; and

C. Such other and further relief as this Court deems proper.

Respectfully submitted,

/s/ Robin J. Gray
_____
Robin J. Gray, Esq.
PO Box 6874
Wyomissing, PA 19610
(484) 769-5855
robin@robinjgraylaw.com