IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRENCE NICHOLS   *

v.   *   Civil Action No.   CCB-20-3176

ABDOLREZA HAJIR, et al.   *

************

**MEMORANDUM**

This case involves a parting of the ways between two former friends attempting to start up a business on the Eastern Shore for the Halal processing of poultry. The plaintiff, Terrence Nichols, now claims a share of the business profits based on a partnership he says he entered with the defendant Abdolreza Hajir in 2008. Because the relevant facts remain in dispute, Mr. Hajir's pending motion for summary judgment will be denied, as explained below.

The factual background is lengthy. Only the most relevant facts will be included as needed to explain the ruling. In 2008, in an attempt to obtain financing to start a business together, Nichols and Hajir created a plan for a business to be known as Tauherr Poultry Farms ("TPF"). (ECF 22-6, Ex. 4).  The Plan represented that "Tauherr Poultry Farms will be managed by owners partnership" and that TPF "is owned (60%--40%) by its two partners: 1) Mr. Abdolreza Hajir (managing director) [and] 2) Mr. Terrence Nichols (Director of Operations)" (*Id.* at 12). The Plan also stated that TPF was an LLC registered in Maryland, but that was not correct.

At the time, neither Nichols nor Hajir invested any cash. When attempts to obtain conventional financing failed, Hajir was able to obtain a million-dollar investment from another friend, Dr. Saied Sadhigi. Dr. Sadhigi, however, after meeting with both Nichols and Hajir, told Hajir that his investment came on the condition that "he would finance it but under his rule.

1

Therefore, all rule and rules and setup has pushed to the side. The person who was going to finance, he set new rules for that." (ECF 22-3, Ex. 1, Hajir Dep., at 29) (reference is to page of transcript). Hajir admits that he did not tell Nichols about this change. (*Id.*).

Nichols continued his efforts on behalf of the processing plant, and found the land that was then purchased for the business in the name of a new LLC, Princess Anne Enterprises ("PAE"), registered in 2011. (ECFs 22-7, Ex. 5, 22-8, Ex. 6, and 25-4, Nichols Dep. at 35-36). PAE's members were Dr. Sadhigi, with a 95% membership interest, and Hajir, with a 5% interest. (ECF 22-4, Hajir Aff. ¶ 14). Nichols was not included. Various events that occurred from 2011 through 2016, when the plant became operational, are consistent with Nichol's claimed belief that he was still working on behalf of the business as a partner. A 2011 business plan for TPF named Nichols and Hajir on the cover page and identified them as the founders. (ECF 25-11, Ex.9, at 4,8). Nichols was involved in the plant design (ECFs 25-12 Ex. 10 and 25-15, Ex. 13) and obtaining a water allocation from the local government in 2012. (ECFs 25-13, Ex. 11 and 25-14, Ex. 12). In 2014, he negotiated the purchase of a DAF water unit. (ECF 25-16, Ex. 14).

In 2015, Hajir formed Ihsan Farms, LLC, with the plan that PAE would own the land and IFC would operate the plant, but this LLC was cancelled in 2020. (ECF 22-4, Ex. 2, ¶¶ 18-21). Nichols was not included. When the plant became operational in 2016, Nichols says he worked there from January to August, despite being paid for only two months by a W-2. According to Nichols, when he asked Hajir questions about the finances and the profits of the business, Hajir became agitated and told him he did not need to know. (ECF 22-5, Ex. 3, Nichols Dep., at 31). Nichols went to work briefly for a company called Halal USA, which Hajir contends is a competitor, (ECF 22-4 ¶ 33), but Nichols disputes that characterization. (ECF 25-4, Nichols Dep. at 75).

2

Hajir's position is that, at some point after 2011, he reached an agreement with Nichols that Nichols would continue to exert his efforts on behalf of the business not as a partner but with the expectation of having a job as Director of Operations and later being able to buy some ownership in the company. (ECFs 22-3 at 8 and 22-4 ¶ 13). Hajir produced an unsigned management agreement (ECFs 22-4 ¶ 25 and 22-14, Ex. 12) which Nichols did not recall ever seeing or signing. (ECF 25-4, Nichols Dep. at 63-64). Hajir also points out, without dispute, that Nichols never contributed actual cash capital to the formation of the business.

Under Maryland law, "the existence of a partnership based on the intent of the parties is an issue of fact"; the party alleging a partnership was formed "has the burden of proving that intent." *MAS Associates, LLC v. Korotki*, 214 A.3d 1076, 1086 (Md. 2019). A "partnership, like any other contract, requires mutuality, a meeting of the minds and agreement, and it requires definite terms and specific intent," but it need not be written. *Id.* at 1087. "As between the parties, partnership is a matter of intention, to be proved by their express agreement or inferred from their acts and conduct." *Id.*, quoting *Morgart v. Smouse*, 103 Md. 463, 468 (1906). The *Korotki* court also cited with approval to the D.C. Circuit's opinion in *Queen v. Schultz*, 747 F.3d 879, 887 (D.C. Cir. 2014). ("Whether a partnership exists is an issue of fact, turning less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transaction").

Nichols has proffered evidence to show that he and Hajir reached a partnership agreement in 2008 under which, among other things, they would attempt to obtain financing, but Nichols would only be expected to contribute his time and energy ("sweat equity") to getting the business up and running. *See Queen*, 747 F.3d at 888, quoting Black's Law Dictionary 237 (9th ed. 2009) (defining "capital contribution" as "cash, property, or services contributed by partners to a

3

partnership"). Eventual profits would be shared 60%/40%. Nichols continued to invest his time and energy over the next eight years. Unbeknownst to him, he contends, Hajir breached his partnership duty of loyalty by entering a different agreement with Dr. Sadhigi. Hajir does not deny he concealed this change from Nichols. Hajir contends the relationship was altered to fit the arrangement reflected in the 'Management Agreement," but there is a clear conflict of credibility on this issue between Hajir and Nichols, who does not recall even seeing such an agreement.

Hajir points to the existence of the PAE LLC, which did not include Nichols, but it is not inconsistent with a partnership for the partners to agree to conduct its operations in conjunction with an LLC. *Korotki*, 214 A.3d at 1088.[1]

Hajir also argues that the three-year statute of limitations bars Nichols's claim for any damages arising before November 2017. But there remain questions of fact about when Nichols knew or should have known about Hajir's alleged breach of his partnership duties to Nichols.

Nichols's complaint alleges claims for breach of contract, unjust enrichment, specific performance, and fraud (which he also describes as a breach of the fiduciary duty arising from the partnership). (*See* ECF 25-1 at 18-19). The defendants, other than Ihsan Farms, LLC, which apparently has been dissolved, bring a counterclaim against Nichols based on the existence of the Management Agreement allegedly entered in 2017. They claim that Nichols not only broke his contract and left to go to work for a competitor, but also tortiously interfered with PAE's customers, entitling the plaintiffs to substantial compensatory and punitive damages.

---

[1] In *Korotki,* by contrast, the court found that the parties always intended to form an LLC, and therefore did not intend to form a partnership.

Given the existence of genuine disputes of material fact underlying both sets of claims, it appears this case must proceed to trial. The court will not attempt at this point to further analyze the specific claims for relief advanced by Nichols, and whether all the defendants should remain in the case, because it is clear that Nichols, if his version of the evidence is believed, may prevail on at least one of his claims. A separate Order follows.

 3/21/2022                                                         /S/                                    
Date                                                              Catherine C. Blake
                                                                  United States District Judge